401 P.2d 232

**Perry W. HURST and Estelle V. Hurst, his wife, Appellants,**

**v.**

**Lee J. HURST and Ilah A. Hurst, his wife, Appellees.**

**2 CA–CIV 9.**

Court of Appeals of Arizona.

April 28, 1965.

228 ■

John C. Hughes, Phoenix, for appellants.

John C. Haynes, Jr., and Harry H. Haynes, by John C. Haynes, Jr., Tucson, for appellees.

HATHAWAY, Judge.

Appellants, Perry W. and Estelle V. Hurst, by oral agreement with Lee J. and Ilah A. Hurst, appellees, formed a partnership on or about September 25, 1950, for agricultural purposes. (Perry Hurst and Lee Hurst are brothers.) The partnership was dissolved by acts of the partners on March 31, 1954, and the appellees continued in possession and control of all the partnership assets, utilizing them for their own benefit. On June 11, 1954, appellants instituted an action for partnership accounting and division of assets. A receiver was

appointed on February 27, 1957, to take over the partnership assets. The case was tried to the court sitting without a jury, and judgment was entered on February 10, 1958, from which the appellants herein appealed. While that appeal was pending, a liquidation sale of the partnership property was held, and court confirmation of the sale was entered.

In deciding the first appeal, the Supreme Court reversed the judgment and remanded the case with instructions:

"(1) to grant a new trial with respect to the issue of 'living or managerial' expenses or remuneration owed to appellee and (2) to modify the judgment by allowing to appellants interest on the value of their share of the partnership assets utilized by appellees after the date of dissolution."

In accordance with the mandate of the Supreme Court in Hurst v. Hurst, 86 Ariz. 242, 344 P.2d 1001 (1959), a second trial was held in the lower court, and the appellants have entered this appeal from the judgment rendered therein. Appellants' assignments of error present the following questions for our consideration:

1. Was the sale of partnership assets improperly conducted?
2. Was the allowance of salary to Lee J. Hurst erroneous?
3. Was the value of appellants' share of the partnership assets properly computed?
4. Was the allowance of interest on appellants' share of the partnership assets properly computed?
5. Were the costs properly assessed?

## SALE OF PARTNERSHIP PROPERTY

Appellants, the successful bidders at the sale, contend that the sale was improperly conducted in that the court reopened the bidding to allow a bid matching appellants' final bid to be entered. The sale of the partnership assets was conducted on February 25, 1958, and the court confirmed the sale on April 14, 1958. In the prior appeal, Hurst v. Hurst, supra, appellants did not object to the reopening of the bidding despite the fact that the order confirming the sale was part of the abstract of record filed in the first appeal.

It has been held, and we so hold, that any question which could and should have been raised on the first appeal may not be presented to nor considered by this court on the second appeal. Paramount Pictures, Inc. v. Holmes, 58 Ariz. 1, 4, 117 P.2d 90 (1941); Gold v. Killeen, 50 Ariz. 126, 130, 69 P.2d 800 (1937); 5B C.J.S. Appeal & Error § 1825. In the Paramount case, supra, the court quoted from Arizona-Parral Mining Co. v. Forbes, 16 Ariz. 395, 146 P. 504, 506 (1915):

" * * * 'appeals cannot be allowed by piecemeal. There must be an end to them as speedily as the contention of litigants may be advanced and decided. So it is that all questions reserved for review by an Appellate Court must be presented on the first appeal thereafter from a final judgment, or not at all; for thereafter all questions presented by the record will be considered as finally determined and all such questions not expressly affirmed or reversed will, by implication, be deemed affirmed.' "

## ALLOWANCE OF SALARY TO LEE J. HURST

The Supreme Court in Hurst v. Hurst, supra, on remanding the case to the Superior Court with instructions to grant a new trial with respect to the issue of living and managerial expenses or remuneration owed to appellee, Lee J. Hurst, stated:

"The pertinent finding of the trial court in its terms, however, does not award remuneration for acting in the partnership business as such, but instead grants appellee a credit 'for living and managerial *expenses*'. Considering the finding in its own terms, it is conceivable that certain living and managerial expenses incurred by a partner, although benefiting him personally, nevertheless

**230**

might be proper business expenses. (Citations) In the record of this case; however, we are unable to find substantial support for any such award. As for interpreting the judgment as allowing to appellee a salary for services rendered, perhaps, taking into account all of the circumstances, an agreement to compensate appellee when there were profits not required for reinvestment might be implied,[2] (Citations); but we are uncertain that that was what the trial judge intended * * *. In light of the uncertainty of basis for the trial court's judgment we think it appropriate that the case be remanded for a new trial on the issue * * *." (Emphasis in original) See Hurst v. Hurst, 86 Ariz. 242, 245, 344 P. 2d 1001, 1003 (1959).

■ On the retrial, the judgment awarded salary to Lee J. Hurst at the rate of $6,000 per year for "services rendered" in the years 1951, 1953, and 1956. Therefore, it is apparent that the trial judge based the award on a determination that appellee Hurst was entitled to remuneration for services rendered rather than a credit for living and managerial expenses. The testimony of Ilah Hurst to the effect that Lee Hurst was not to get salary until profits weren't needed in the business would support the finding of an implied agreement to pay wages for services rendered during the existence of the partnership. On appeal, this court will not disturb the judgment of the lower court where there is any reasonable testimony to support it. Mahurin v. Schmeck, 95 Ariz. 333, 343, 390 P.2d 576 (1964); Lenslite Co. v. Zocher, 95 Ariz. 208, 212, 388 P.2d 421 (1964). The trial judge, having had an opportunity to hear the testimony and to observe the witnesses, will not be reversed by this court if there is evidence to support his conclusion. Smith v. Neely, 93 Ariz. 291, 294, 380 P.2d 148 (1963). The evidence is to be viewed in the strongest manner in favor of the appellee and in support of the trial judge's finding that he was entitled to a salary from profits not needed for reinvestment, since there was reasonable evidence to support the finding. Kingsbery v. Kingsbery, 93 Ariz. 217, 221, 379 P.2d 893 (1963); Holaway v. Realty Associates, 90 Ariz. 289, 291, 367 P.2d 643 (1961).

■ This court affirms the allowance of salary to appellee Hurst for the years 1951 and 1953. However, the award of salary for the year 1956 was clearly erroneous. The partnership was dissolved by acts of the partners as of March 31, 1954. Between the date of the dissolution and the date a receiver was appointed, February 27, 1957, there was a lapse of approximately three years and one month. During this period the appellees used the partnership assets as their own The partnership having been dissolved, appellee was not entitled to compensation for services rendered to the partnership. Furthermore, salary for the year 1956 cannot be justified as compensation for time spent in winding up the affairs of the firm. "Winding up" means the administration of the assets for the purpose of terminating the business and discharging the obligations of the partnership to its members. Duncan v. Bartle, 188 Or. 451, 216 P.2d 1005, 1013 (1950).

A.R.S. § 29-218(6) provides as follows:

"No partner is entitled to remuneration * * * except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."

The record discloses that the appellees, after dissolution, made no effort to wind up the business of the firm. They continued in exclusive control of the firm's assets until the receiver was appointed. Therefore, the judgment is modified to allow $12,000 to Lee J. Hurst as salary.

"2. The testimony of Ilah Hurst on the point was that Lee Hurst 'was not to get salary until it was a paying business—until what was made above expenses weren't needed to be turned back into the farming.'

## VALUE OF APPELLANTS' SHARE

The lower court's judgment states:

"3. That the plaintiffs shall be allowed interest on the *value of their share of the partnership assets utilized by defendants from March 31,1954* until appointment of a receiver \* \* \* on February 27, 1957. (Emphasis supplied)

"4. That the partnership assets are of the value of $187,387 \* \* \* consisting of $165,000 representing the sales price of the leasehold, $5,000 representing the sales price of the personal property, and $17,387 cash in the hands of Lee J. Hurst."

The lower court seems to recognize that appellants' share is its value as of the date of dissolution, and on the other hand, erroneously permits the value to be determined from the proceeds of a receiver's sale held almost four years after dissolution.

A.R.S. § 29–242 provides:

"When any partner retires or dies, and the business is continued under any of the conditions set forth in subsections A, B, C, E and F, of § 29–241, or, paragraph 2, subsection B, of § 29–238, without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; provided that the creditors of the dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this section,

as provided by subsection H, of § 29–241."

 Thus we see that the appellants' status on March 31, 1954, was translated from active partnership membership to that of "an ordinary creditor" to the extent of the value of their interest in the dissolved partnership. 10 A.R.S. § 29–242, supra; Wikstrom v. Davis, 211 Or. 254, 315 P.2d 597, 607 (1957); Moseley v. Moseley, 9th Cir., 196 F.2d 663, 666 (1952). They were the owners of an equity in the partnership assets at whatever value it was at the date of dissolution. Appellants were entitled to receive payment for it from the continuing partner at that time or later upon the completion of the winding up of the business of the old partnership. The reason for allowance of interest or profits on his share to a retiring partner is to hasten the process of "winding up." Until liquidation was completed, the appellants remained contingently liable for the payment of partnership debts incurred by the former partnership prior to the dissolution date. This liability could only be terminated by a liquidation which would insure payment to any such partnership creditors. As stated by the court in Wikstrom v. Davis, supra, 315 P.2d at p. 608:

"The option \* \* \* to receive interest or profit on his share while awaiting receipt of this value upon the completion of the winding up of the partnership business is in the nature of a species of compulsion as to those continuing the business in order to hasten its orderly winding up, thereby avoiding the burden to themselves of paying Wikstrom interest or profits for the use of his property."

 The court below referred to a special master the task of determining the exact sums to which the respective parties to the lawsuit were entitled so that an order of distribution of partnership assets could be entered. The master's report, submitted to and accepted by the court, set forth partnership equities as of December 31, 1960, and the final distribution was predicated

thereon. In accordance with our foregoing discussion, we hold that the lower court erred in its determination of the value of appellants' equity. An evaluation of the partnership assets as of the date of dissolution, i. e., March 31, 1954, was required in order to establish the value of appellants' share utilized by the appellees subsequent to dissolution. The proceeds from the sale of the partnership property at a receiver's sale in 1958 was an improper valuation to apply.

This court is loath to remand this case for purposes of a determination of the value of appellants' equity as of March 31, 1954. However, there is no alternative as it cannot be ascertained with reasonable accuracy from the record. The book value assigned to the tangible assets by the master in his initial accounting report and the ultimate sales price of same are arbitrary valuations and cannot be applied. Basically the procedure should be as follows:

1. Valuation of the partnership assets (as of March 31, 1954) which shall include the leasehold interest, equipment and other personal property, cash in bank, and accounts receivable. It is to be noted here that the sum of $15,000 which was determined on the first appeal, Hurst v. Hurst, supra, to be an advance to appellants, should be included as a partnership asset, i. e., a debt owed to the partnership, an account receivable.

2. Determination of partnership liabilities incurred prior to March 31, 1954. This figure shall include the sum of $12,000 herein decided to be owing to appellee Lee Hurst for salary in 1951 and 1953.

3. Substract item number two from item number one. The resulting figure will be the total of the partners' equities in the partnership property. There is no necessity for return of capital contributions as it was determined on the prior appeal, Hurst v. Hurst, supra, that the partners were to pool resources and their contributions became partnership assets.

4. One-half of the total partnership equity is the value of appellants' share of the partnership property, as it has been determined that the partners were equal.

5. Subtract $15,000 from item number four. The resulting figure is appellants' distributive share.

The judgment of the trial court as to the value of appellants' share is accordingly reversed.

## COMPUTATIONS OF INTEREST

 The appellants were allowed interest at 6 per cent per annum for a period of 37 months, from March 31, 1954, to February 27, 1957, the date on which a receiver was appointed by the court. The records on a former appeal may be looked into for the purpose of ascertaining what facts and questions were then before the court. Hard v. Hollywood Turf Club, 134 Cal.App.2d 174, 285 P.2d 321, 324 (1955). An examination of the record in the prior appeal discloses that appellants claimed they were entitled to interest for the period of March 31, 1954, to February 27, 1957. The Supreme Court, in Hurst v. Hurst, supra, modified the judgment to allow interest to appellants on the value of their share of partnership assets utilized by appellees after the date of dissolution.

 Appellants now attempt to extend the period to include an additional 12 months, i. e., from February 27, 1957, to February 25, 1958, the date of the receiver's sale of partnership property. After a case is remanded, the reviewing court will consider only those questions arising subsequently to the remand or which were not adjudicated in the former opinion. 5B C.J.S. Appeal & Error § 1823, p. 192. As we have hereinabove stated, appeals cannot be allowed by piecemeal. Paramount Pictures, Inc. v. Holmes, supra; Arizona-Parral Mining Co. v. Forbes, supra. Appellants, having procured on their first ap-

peal an allowance of interest in accordance with their claim of error, are now precluded from seeking additional interest. This court will not now consider a matter which could and should have been raised on the first appeal. The lower court's judgment as to the period for which interest is allowed is affirmed, the final determination of the amount due to abide the ascertainment of value of appellants' share.

## ASSESSMENT OF COSTS

The judgment rendered herein decreed that the parties each pay one-half of the costs of filing the judgment and one-half of the balance remaining due the master for services rendered. Appellants argue that, as the prevailing party, they were entitled to recovery of costs. We disagree. A proceeding to dissolve and liquidate a partnership is controlled by equitable principles, and the trial judge has a broad discretion in imposing costs. Vangel v. Vangel, 45 Cal.2d 804, 291 P.2d 25, 29, 55 A.L.R. 2d 1385 (1955); Merlino v. Fresno Macaroni Mfg. Co., 74 Cal.App.2d 120, 126, 168 P.2d 182 (1946).

As a general rule, the costs and expenses of a suit for a partnership dissolution or accounting, or both, are payable out of the partnership estate. 68 C.J.S. Partnership § 448. Except when express provision therefor is made either in a statute or in the Arizona Rules of Civil Procedure, costs shall be allowed as of course to the prevailing party *unless the court otherwise directs.* 16 A.R.S. Rule 54(f) R.C.P. Under Rule 54(f), supra, the imposition of costs is a matter within the trial court's discretion, Bank of China v. Wells Fargo Bank & Union Trust Co., 9th Cir., 209 F.2d 467, 476, 48 A.L.R.2d 172 (1953); Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6th Cir., 119 F.2d 316, 326 (1941), and any doubt concerning the

discretion of the court to assess costs incident to trial should be resolved in favor of such discretion. United States v. Arizona Canning Co., C.A.Colo., 212 F.2d 532, 534 (1954). Accordingly, this court affirms the assessment of costs.

## SUMMARY

The judgment is affirmed as to the period for which interest [1] shall be computed and as to the assessment of costs. The judgment is modified as to the allowance of salary to appellee Lee J. Hurst. The judgment is reversed as to the determination of value of appellants' share of partnership assets with directions to properly evaluate same as of the date of dissolution.

KRUCKER, C. J., and MOLLOY, J., concur.

---

1. The $15,000 owed to the partnership by the appellants is to be deducted from the value of their share, and the interest due shall be computed on the balance.

