### DIRECT MAIL SPECIALIST, INC., Plaintiff,

v.

**Murr L. BROWN, Cheryl L. Brown, Stephen R. Morgan, Darlene O. Morgan, LeRoy Turner, Patricia Turner, Nyle S. Anderson, Jerri L. Anderson, James A. Maw, Kerry R. Maw, Wayne Muhlestein, and Linda K. Muhlestein, d/b/a Peaceful Bay Resort & Club, Defendants.**

No. CV 83–133–M–RES.

United States District Court, D. Montana, Missoula Division.

Dec. 2, 1987.

Ronald L. Bender, Stacey Weldele–Wade, Worden, Thane & Haines, Missoula, Mont., and Richard M. Hymas, Nielsen & Senior, Salt Lake City, Utah, for plaintiff.

Randall A. Snyder, Bigfork, Mont., for defendant Murr L. Brown.

Cheryl L. Brown, Roy, Utah, Stephen R. and Darlene O. Morgan, Bigfork, Mont., LeRoy & Patricia Turner, Kalispell, Mont., James Park Taylor, Geiszler, Taylor, Newcomer & McClain, Missoula, Mont., for defendants Muhlestein, Nyle S. Anderson and Jerri L. Anderson, and Jerry A. Maw and Kerry R. Maw.

## OPINION and ORDER

RUSSELL E. SMITH, District Judge.

In this action to collect a debt, both sides have moved for summary judgment. The record consists of the affidavits filed on behalf of the various parties and the deposition of Murr L. Brown and the exhibits attached thereto.

It is conceded that services of the value of $10,997.85 were furnished by the plaintiff to Peaceful Bay Resort and Club. There are three questions presented. First, whether the parties other than Murr L. Brown should be treated as general or limited partners? Second, whether the defendants may be permitted to renounce? Third, whether penalties for usury should be assessed?

The answers to the amended complaint admit that all of the defendants were limited partners, and in addition, that Murr L. Brown was a general partner. The plaintiff has not shown that the defendants, other than Murr L. Brown, knew that they were anything but special partners, and for the purposes of this motion, I must assume that it was the intent of all of the parties, other than Murr L. Brown, to be limited partners.

*First,* the plaintiff's dealings were with an entity known to it only as Peaceful Bay Resort and Club. It had no actual knowledge that Peaceful Bay Resort and Club was a limited partnership. If knowledge is to be imputed to the plaintiff, it must be a constructive knowledge arising out of the filings that were made.

A Certificate of Limited Partnership for Peaceful Bay Partners was filed in the office of the Clerk and Recorder of Flathead County on March 18, 1981. It recited:

> The purpose and character of the business of the partnership is to acquire, own and operate real and personal property, including that property commonly referred to as the Peaceful Bay Resort & Club. Such property shall be converted to condominiums for resale.

The certificate was not recorded in the office of the Secretary of State as required by Mont.Code Ann. § 35–12–201(2) (1979), the law in force at that time. The certificate was further defective in that an Exhibit A, which was supposed to show, as required by law (Mont.Code Ann. §§ 35–12–201(1)(f) and (i) (1979)), the contributions made by each partner and the share of profits which he was to receive, was not attached. The acknowledgements were defective in that the instrument was dated on the 31st day of December, 1980, and filed

on March 18, 1981, but four out of five of the acknowledgements were shown to have been made on the 31st day of December, 1981.

An application for registration of an assumed business name was filed in the office of the secretary of state on March 31, 1981, by Murr L. Brown, on behalf of Peaceful Bay Partners. It sought to use the assumed name, Peaceful Bay Resort and Club, in the development and sale of time-share condominiums. The application on the face shows that it is a partnership with all of the defendants named as partners. The names of the partners are given on one page and the names and addresses are given on another, but in neither place is there any indication that the partners are limited partners. A Certificate of Registration was issued by the Secretary of State on March 31, 1981.

■ In view of the defects which I find in the Certificate of Limited Partnership which was filed, and in view of the fact that the only filing with the Secretary of State, where most out-of-state persons would be apt to look, does not describe the partnership as limited, I am unable to find that there has been a substantial compliance in good faith with the provisions of Mont.Code Ann. § 35–12–201(3) (1979). I find that the plaintiff had neither actual nor constructive notice that it was dealing with a limited partnership.

Limited partnerships were unknown in common law and are creations of statutes. Where there is a failure substantially to comply with the statutes authorizing limited partnerships, the parties remain liable as general partners as to third persons having no knowledge of the limited nature of the partnership. 68 C.J.S. *Partnership* § 40 (1950), 60 Am.Jur.2d *Partnership* § 376 (1972), *Bisno v. Hyde,* 290 F.2d 560 (9th Cir.1961), *Hoefer v. Hall,* 75 N.M. 751, 411 P.2d 230 (1966).

*Second,* on March 18, 1981, when the Certificate of Limited Partnership was filed, Mont.Code Ann. §§ 35–12–101

through 35–12–403 (1979) governed limited partnerships. On April 29, 1981, 1981 Mont.Laws 522 was approved amending the Uniform Partnership Act.

Section 63(3) of that Act reads: [1]

A limited partnership formed under any statute of this state before [the effective date of this act], until or unless it elects to be governed by [this act], shall be . governed by 35–12–101 through 35–12–403, or other applicable prior law.

There was no election to be governed under the amended act, and, hence, Mont. Code Ann. § 35–12–312 (1979) remains the law applicable to this case. It provides:

A person who has contributed to the capital of a business conducted by a person or partnership erroneously believing that he has become a limited partner in a limited partnership is not, by reason of his exercise of the rights of a limited partner, a general partner with the person or in the partnership carrying on the business or bound by the obligations of such person or partnership; provided that on ascertaining the mistake he promptly renounces his interest in the profits of the business or other compensation by way of income.

This act has been very liberally construed. It has been held that a person who erroneously believed that he was a limited partner could, even after debts had been incurred, or after a bankruptcy had taken place, make the required renunciation. *See Giles v. Vette,* 263 U.S. 553, 44 S.Ct. 157, 68 L.Ed. 441 (1924), and *Rathke v. Griffith,* 36 Wash.2d 394, 218 P.2d 757 (1950), 18 A.L.R.2d 1349 (1951).

■ In this case, the defendant, Cheryl L. Brown, on November 9, 1987, and following the publication of a proposed order, filed a renunciation of any interest in the profits of the business or other compensation by way of income. No other renunciations have been filed. In the case of *Vidricksen v. Grover,* 363 F.2d 372 (9th Cir.1966), the Court of Appeals for the

---

**1.** This section was not codified by Mont.Code Ann. (1981). It was not discovered by counsel for either party or by Judge Lovell. It appears only in the Session Laws and the author of this opinion stumbled on it purely by accident.

Ninth Circuit, held in construing a California statute identical with Mont.Code Ann. § 35–12–312 (1979) that a person, wishing to renounce, must do so as soon as he learns that there is something wrong with the organizational setup. A first amended complaint naming all of the defendants was filed in this case in April, 1984, and shortly thereafter, each defendant knew the plaintiff was seeking to hold them as general partners. Under these circumstances, the renunciation by Cheryl Brown was not timely, and it follows that future renunciations will not be.

It is urged, with some justification, that because Section 63(3) of Chapter 522 of the 1981 Laws of Montana was not codified, defendants were unaware of their right to renounce. However, Mont.Code Ann. § 35–12–704 (1987) provides that a person who mistakenly believes that he is a limited partner may limit his liability by filing a certificate of withdrawal from the limited partnership. No effort was made to comply with this section of the law, and I cannot believe that had the partners known Mont.Code Ann. § 35–12–312 (1979) applied to them, that they would have taken advantage of it, and I, therefore, hold that, in this case, ignorance of the law is no excuse.

*Third,* plaintiff, a Mississippi corporation, delivered its services to the Peaceful Bay Resort and Club by mail on an open account. When the account was not paid, Mr. Hymas, a lawyer in Salt Lake, wrote to Mr. Brown, on December 7, 1982, and agreed to delay the filing of a lawsuit if Brown would sign a promissory note. Ultimately, a note was prepared by Mr. Hymas and sent to Murr L. Brown, in Kalispell, Montana. The note was payable on demand, and if no demand was made, the note was to be paid in installments at the offices of Boyd, Kennedy and Rumney in Salt Lake. The note set interest at 15% per annum and provided that, in the event of a default, the maker would pay all collection costs including reasonable attorney fees. This note was never signed, but the note accurately stated the terms of an oral agreement between Mr. Brown and Mr. Hymas. Some payments were made as agreed, and the check for one payment was returned for lack of funds.

The defendants now contend that the 15% interest rate was usurious under the law then in effect (Mont.Code Ann. § 31–1–107(1) (1981)), and that the penalties should be assessed. The penalty for taking, receiving, reserving or charging an interest greater than allowed is "a forfeiture of a sum double the amount of interest which the note ... carries or which has been agreed to be paid thereon." Mont. Code Ann. § 31–1–108 (1981).

■ The first question to be decided is which law applies. Mont.Code Ann. § 28–3–102 (1979) provides:

A contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

*See Kemp v. Allstate Ins. Co.,* 183 Mont. 526, 601 P.2d 20 (1979).

It is my opinion that the place where a note is payable is the place of performance. In the case of *Seeman v. Phila. Warehouse Co.,* 274 U.S. 403, 407, 47 S.Ct. 626, 627, 71 L.Ed. 1123 (1927), it was said:

The general principle in relation to contracts made in one place, to be executed in another, is well settled. They are to be governed by the law of the place of performance, and if the interest allowed by the laws of the place of performance, is higher than that permitted at the place of contract, the parties may stipulate for the higher interest, without incurring the penalties of usury.

To the same effect is the holding in *Burr v. Renewal Guar. Corp.,* 105 Ariz. 549, 468 P.2d 576 (1970).

■ It appears to me that Section 70B–2–201 of the Utah Consumer Credit Code which was in effect at the time here involved fixed rates which may be charged in credit transactions and that a rate of 15% is not usurious under that law.

IT IS HEREBY ORDERED that defendants' motion for summary judgment is denied.

IT IS THEREFORE ORDERED that judgment in this case be entered in favor of the plaintiff and against the defendants, jointly and severally, in the amount of $11,-395.69 with interest at the rate of 13%[2] from January 7, 1983, in the amount of $7,249.50, for a total of $18,645.19, together with costs and attorney fees to be awarded as a part of the costs.

2. Plaintiff, in its prayer, changed the interest rate from 15% to 13% on the amount owing.